```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
```

In re:

WILLIAM J. WISOTZKE, JR.,

                          Debtor.

CASE NO. 08-21178

DECISION & ORDER

WILLIAM J. WISOTZKE, JR.,

                          Plaintiff,

             V.

COUNTY OF ONTARIO,

                          Defendants.

AP NO.  10-2026

## BACKGROUND

On May 14, 2008, William J. Wisotzke, Jr. (the "Debtor") filed a petition initiating a Chapter 13 case.

In the Debtor's Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that:  (1) the Debtor resided at 8500 Sherbrooke Street, Honeoye, New York (the "Sherbrooke Property"), which was titled to his deceased parents, William J. Wisotzke and Ruth M. Wisotzke; (2) the Debtor was the sole beneficiary under his parents' Wills; (3) the Property had a current value of $74,600.00; and (4) there were secured real property tax liens against the Property, totaling $10,751.42, in favor of Ontario County (the "County"), the Town of Richmond and HLPA, Inc.

On August 14, 2008, the Court entered a Decision & Order, <u>In re Wisotzke</u>, 392 B.R. 39 (Bankr. W.D.N.Y. 2008) (the "Bankruptcy Court Decision & Order"), which addressed the effect in the Debtor's bankruptcy case of the County's October 2007 *in rem* tax foreclosure proceeding (the "Tax Proceeding"), commenced in order to collect the delinquent real property taxes due on the Sherbrooke Property.

In the Bankruptcy Court Decision & Order, the Court held that at the time of the filing of the Debtor's petition, the Sherbrooke Property was not Section 541[1] property of his bankruptcy estate, because the Debtor's interest in the Property terminated, at the latest, thirty days after the February 29, 2008 entry of a Default Judgment (the "Default Judgment") in favor of the County. The Court reasoned that, at that time, possession and ownership of the Sherbrooke Property had been transferred to the County (the

---

[1] Section 541(a)(1) provides that:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541 (2011).

"Transfer"), and the Debtor could no longer even move under New York State law to vacate the Default Judgment.[2]

On June 23, 2009, in <u>Wisotzke v. Ontario Co.</u>, 409 B.R. 20 (W.D.N.Y. 2009) (the "District Court Decision"), the United States District Court for the Western District of New York affirmed the Bankruptcy Court Decision & Order.

On October 26, 2009, the Debtor filed a Motion to Deem the Cause of Action Abandoned by the Trustee (the "Motion to Abandon"), which asserted that: (1) the Debtor had appealed the District Court Decision to the United States Court of Appeals for the Second Circuit (the "Second Circuit"); (2) there remained an issue as to whether the Transfer that took place in the Tax Proceeding constituted a fraudulent conveyance under Section 548, since the Sherbrooke Property was purchased at an auction conducted by the County, subsequent to the Tax Proceeding (the "Auction Sale"), for an amount that was significantly more than the unpaid tax liability; (3) the Chapter 13 Trustee (the "Trustee") had, to date, declined to commence a fraudulent conveyance action against the

---

[2]    In the Bankruptcy Court Decision & Order, the Court expressly stated that its Decision & Order in no way limited or determined: (1) the Chapter 13 Trustee's rights, if any, under Section 544, Section 548 or Section 549 of the Bankruptcy Code, or under any other provision of the Bankruptcy Code or non-bankruptcy law; or (2) the actual legal or equitable ownership interests, if any, that the Debtor may have held in the Sherbrooke Property from the date of the commencement of the Tax Proceeding, to the date of the Decision & Order, since none of the parties-in-interest disputed that the Debtor was bound by the Tax Proceeding and the Default Judgment.

County because of the pending appeal; and (4) since the two-year statute of limitations under Section 544 would likely expire prior to the issuance by the Second Circuit of a Decision & Order on the Debtor's appeal of the District Court Decision, the Debtor requested that the Court: (a) impose a brief deadline for the Trustee to commence a fraudulent conveyance action; and (b) in the event the Trustee failed to file such an action, authorize the Debtor to file the action pursuant to Section 522(h).[3]

On January 13, 2010, over the objections filed by the County and Donald Brault ("Brault"), the purchaser of the Sherbrooke Property at the Auction Sale, the Court: (1) granted the Motion to Abandon; and (2) required that if the Trustee elected to, he could commence a fraudulent conveyance action against the County no later

---

[3]    Section 522(h) provides that:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

U.S.C. § 522(h) (2011).

than January 22, 2010, or the cause of action would be abandoned to the Debtor.

On February 5, 2010, the Trustee filed a letter, which indicated that he had not commenced a fraudulent conveyance action against the County because of the: (1) uncertain economic benefit that would result for unsecured creditors; and (2) prospect of protracted litigation. Specifically, the Trustee indicated that: (1) a bankruptcy estate's interest can be no greater than that which the Debtor possessed on the date of the filing of his petition, and here, the Sherbrooke Property was an asset of the Debtor's deceased mother's (the "Decedent") estate (the "Decedent's Estate"), so that the most the Debtor ever owned, even prior to the Tax Proceeding, was a yet-to-be determined interest in whatever assets remained in the Decedent's Estate after it had been fully administered and any creditors of the Estate were paid in full; (2) if the Trustee recovered a money judgment in a fraudulent conveyance action, he would be left with little or nothing to distribute to the unsecured creditors, because his investigation indicated that claims against the Decedent's Estate of approximately $65,000.00 remained unpaid, and the sale price for the Property, the only remaining asset of the estate, at the

Case 2-10-02026-JCN    Doc 24    Filed 02/04/11    Entered 02/04/11 11:32:10    Desc Main
Document    Page 5 of 26

Auction Sale was only $66,000.00;[4] and (3) the Trustee could not rely on the Debtor's cooperation in finally administering the Decedent's Estate, because the Debtor had, to that point, failed to administer the Estate, even though the Decedent had passed away on February 5, 2006.

On May 13, 2010, the Debtor commenced an Adversary Proceeding (the "Adversary Proceeding") against the County. In the Complaint, the Debtor requested a determination that: (1) the Transfer was a fraudulent conveyance under Section 544 and Section 548; (2) the Debtor could avoid the Transfer under Section 522(h); and (3) a money judgment of $50,000.00, pursuant to Section 550(a), was the proper measure of damages.

On June 8, 2010, the County filed an Answer that denied the substantive allegations of the Complaint and asserted: (1) an affirmative defense and counterclaim, which alleged that: (a) the Debtor possessed no legal or equitable interest in the Sherbrooke Property at the time of the Transfer, so that the Debtor could not claim a homestead exemption in the Property pursuant to Section

---

[4] The Trustee indicated that the following claims existed against the Estate: (a) real estate taxes on the Sherbrooke Property of approximately $20,000.00 owed to the County as of April, 2010, with such taxes continuing to increase as they became due; (b) a home equity loan with a balance of approximately $36,398.00 on the Decedent's Augustine Street property (the "Augustine Property"); (c) a funeral bill of $6,883.00; and (d) attorney's fees of $1,792.00.

**Page 6**

522(b);[5] and (b) the Debtor was not the owner of the Property

within the meaning and intent of New York CPLR ("CPLR") § 5206(a),[6]

so the Transfer could not be avoided by the Debtor under Section

522(h); (2) that the Debtor had breached his fiduciary duty to the

Decedent's Estate by:  (a) failing to pay the real property taxes

and water and sewer charges due on the Property; (b) filing what

appeared to be a false Affidavit that he was the sole distributee

of the Decedent, even though the Debtor had two other siblings, who

were not provided notice of the administration of the Estate; and

---

[5]      Section 522(b)(2) provides that:

(2) Property listed in this paragraph is property that
is specified under subsection (d), unless the State law
that is applicable to the debtor under paragraph (3)(A)
specifically does not so authorize.

U.S.C. § 522 (2011).

[6]      Civil Practice Law and Rules Law § 5206(a), Real
Property Exempt From Application to the Satisfaction of
Money Judgments, provides that:

(a) Exemption of homestead. Property of one of the
following types, not exceeding fifty thousand dollars in
value above liens and encumbrances, owned and occupied
as a principal residence, is exempt from application to
the satisfaction of a money judgment, unless the
judgment was recovered wholly for the purchase price
thereof:

(1) a lot of land with a dwelling thereon, (2)
shares of stock in a cooperative apartment
corporation, (3) units of a condominium
apartment, or (4) a mobile home. But no exempt
homestead shall be exempt from taxation or from
sale for non-payment of taxes or assessments.

C.P.L.R. § 5206 (2011).

(c) failing to preserve property of the Estate by allowing the Sherbrooke and Augustine Properties to be lost through *in rem* tax foreclosure proceedings; and (3) a Counterclaim which alleged that the County was entitled to the fair value of the use and occupancy of the Property from the date the Debtor filed his petition through the time he is finally removed from the Property, and that the resulting debt should be determined to be nondischargeable under Section 523, because of the Debtor's acts of occupying and using the Property under false pretenses and breaching his fiduciary duties to the Estate.

On June 29, 2010, in <u>Wisotzke v. Ontario Co.</u>, 382 Fed. Appx. 99 (2d Cir. 2010) the District Court Decision was affirmed by the Second Circuit.

On July 12, 2010, the Debtor filed a Reply in the Adversary Proceeding that denied the substantive allegations of the County's Counterclaims.

On July 13, 2010, the Court held a Pre-Trial Conference, at which time the Court, at the request of the Debtor, afforded the parties the opportunity to submit briefs on the potential effect of the Decision in <u>Connelly v. Roach</u>, 79 B.R. 159 (Bankr. W.D.N.Y. 1987) ("<u>Connelly</u>") upon the Debtor's ability to claim a homestead exemption in the Sherbrooke Property under CPLR § 5206.

**Page 8**

On August 4, 2010, the Debtor submitted a letter which indicated that he was entitled to a homestead exemption under CPLR § 5206 because: (1) under <u>Connelly</u>, an individual was not required to be named in an actual deed to property in order to claim a homestead exemption under CPLR § 5206; (2) in <u>Connelly</u>, the Court permitted the debtor to claim a homestead exemption under CPLR § 5206, in real property where she resided and that was acquired within one-hundred and eighty days of filing her petition, because the Court reasoned that when the real property was brought back into a debtor's estate under Section 541(a)(5),[7] the exemptions that would normally relate to the property should also apply; and (3) like the debtor in <u>Connelly</u>, if the Debtor were successful in

---

[7]    Section 541(a)(5) provides that:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

U.S.C. § 541 (2011).

**Page 9**

his fraudulent conveyance claim, the Debtor's interest in the Sherbrooke Property would be brought back into the Debtor's estate and he could then claim it as exempt.

The August 4, 2010 letter also asserted that the Debtor was entitled to a homestead exemption under In re Martinez, 392 B.R. 530 (Bankr. E.D.N.Y. 2008) ("Martinez"), because: (1) the Court in Martinez indicated that an ownership interest sufficient to satisfy CPLR § 5206 vests in a distributee immediately upon an intestate death; and (2) the Debtor's claim to a homestead exemption in the Sherbrooke Property is stronger than in Martinez, because the Debtor is the sole distributee under the Decedent's Will.

On August 12, 2010, the County submitted a letter, which indicated that the Debtor was not entitled to claim a homestead exemption in the Sherbrooke Property under CPLR § 5206 because: (1) the plain language of CPLR § 5206 states that "no exempt property shall be exempt from taxation or from sale for non-payment of taxes or assessments;" (2) the Debtor was a residuary beneficiary under the Decedent's Will, and under Matter of Estate of Freund, 618 N.Y.S.2d 515 (Sur. Ct. 1994) ("Freund"), and In re: Frank's Will, 123 N.Y.S.2d 452 (Sur. Ct. 1953) ("Frank's Will"), when real property is part of a residuary estate, the property vests in beneficiaries, subject to the possible necessity to liquidate the property in order to pay the necessary administrative

expenses of the estate; (3) the assets of the Decedent's Estate were insufficient to pay the Decedent's debts and administrative expenses required to be paid under the New York Surrogate's Court Procedure Act ("SCPA") § 1811,[8] so that the Sherbrooke Property would be required to be liquidated in order to meet those obligations of the Estate; (4) the Debtor's ownership interest in the Property could not attach until all of the administrative obligations of the Decedent's Estate were met, so that, because they were in fact never paid, the Debtor's ownership interest never attached to the Sherbrooke Property; and (5) Connelly was inapplicable, since: (a) the Court in Connelly focused upon the inequity that would result if property were swept into the estate under Section 541(a)(5), but a homestead exemption was not allowed; (b) there was no discussion in Connelly of whether liquidation of property of a decedent's estate was necessary to pay outstanding administrative expenses, nor how the property passed to the debtor in Connelly, by a residuary interest, or otherwise; and (c) in Connelly, the Court noted that, on the facts of the case, the

---

[8]     The County stated the following administrative expenses and claims were owed by the Estate at the time of the Decedent's death in February, 2006: (1) funeral expenses of $8,300.00; (2) legal fees for the Estate of at least $1,500.00; (3) real property taxes for the Sherbrooke Property of $3,000.00 (with a balance as of June 30, 2010 in excess of $21,000.00, including interest and penalties); (4) real property taxes for the Augustine Property of at least $1,450.00, with City and School taxes for 2006 unknown; and (5) a note and mortgage on the Augustine Property with a balance of $39,000.00.

debtor was entitled to a homestead exemption under CPLR § 5206 and the fresh start afforded by the Bankruptcy Code, whereas this Debtor had failed to preserve assets of the Decedent's Estate and failed to perform his fiduciary duties.

On August 19, 2010, the Court held a Pre-Trial Conference, which it agreed to adjourn in order to permit the County thirty days to file a Motion for Summary Judgment.

On September 20, 2010, the County filed a Motion for Summary Judgment (the "Motion for Summary Judgment"), in which it: (1) restated its prior assertions, arguments and pleadings in the Adversary Proceeding; and (2) requested that the Adversary Proceeding be dismissed because, at the time of the Transfer, the Debtor did not own the Sherbrooke Property, so that he was unable to claim a homestead exemption under CPLR § 5206, and, therefore, lacked standing to assert a fraudulent conveyance claim under Section 522(h).

On October 11, 2010, the Debtor filed a Memorandum of Law in Opposition to the Motion for Summary Judgment and in Support of the Debtor's Cross-Motion for Summary Judgment (the "Cross-Motion for Summary Judgment"), in which he restated his prior assertions, arguments and pleadings, and further indicated that: (1) the Debtor has two half-siblings through his father, who did not have any claim under the Decedent's Will or under New York intestacy

law, and even if they had any claim to the Sherbrooke Property, the
Debtor, as co-owner, would be entitled to a homestead exemption;
(2) at the time of the Decedent's death, the Augustine Property had
an assessed value of $100,000.00 and was subject to a mortgage of
approximately $39,000.00 held by E-Trade Bank ("E-Trade"); (3) the
Augustine Property was subject to foreclosure actions by E-Trade in
January 2007, and by the City of Rochester, for tax arrears, which
resulted in the Augustine Property being sold at a tax auction on
January 18, 2007; (4) the Decedent's Estate remained open, and in
the event that the Debtor was successful in the Adversary
Proceeding, the Surrogate's Court could notice the potential
creditors of the Estate, providing them with the opportunity to
file a claim, subject to any defenses that could be asserted by the
Estate; (5) it was unlikely that the Surrogate's Court would order
a sale of the Sherbrooke Property because: (a) other than the
E-trade debt, the claims filed or that could be filed against the
Decedent's Estate were small, and the Surrogate's Court could order
installment payments, or the Debtor could otherwise make payment
arrangements; and (b) E-trade did not file a claim against the
Decedent's Estate for its approximately $40,000.00 mortgage debt,
and E-trade's claim might be disputed or settled by the Decedent's
Estate or the Debtor; (6) since the Sherbrooke Property was sold
for $66,000.000, even if the Decedent's Estate had claims against

**Page 13**

it of $53,000.00, as asserted by the County in the Motion for Summary Judgment, the Debtor had an interest in the Sherbrooke Property of at least $13,000.00, which satisfies Sections 522(g) and (h), since no minimum value is required; and (7) although CPLR § 5206 requires no particular form of ownership, the homestead exemption is intended to be interpreted broadly because the statute: (a) does not require that exempt property be owned by deed, and it actually extends the homestead exemption to other persons, such as a surviving spouse and minor children;[9] (b) does not define the term "owned," and at a minimum, the Debtor had at the time of the Transfer, and continues to have, an equitable or contingent interest that qualifies as an "interest in real property" under New York Real Property Law ("NYRPL") § 240;[10] and

---

[9]     Civil Practice Law and Rules Law § 5206(b), Real Property Exempt From Application to the Satisfaction of Money Judgments, provides that:

(b) Homestead exemption after owner's death. The homestead exemption continues after the death of the person in whose favor the property was exempted for the benefit of the surviving spouse and surviving children until the majority of the youngest surviving child and until the death of the surviving spouse.

CPLR § 5206 (2011).

[10]     New York Real Property Law Section 240, Definitions and Use of Terms, provides that:

4. The terms "estate" and "interest in real property" include every such estate and interest, freehold or chattel, legal or equitable, present or future, vested or contingent.

N.Y. Real Prop. Law § 240 (2011).

(c) extends to mobile homes, which are personal property, which indicates that if the Debtor's interest in the Sherbrooke Property is a personal property interest, he may still claim a homestead exemption under CPLR § 5206.

On October 15, 2010, Brault filed a Response in Support of the Motion for Summary Judgment, which stated that: (1) assuming that the value of the Augustine Property was $100,000.00, as stated by the Debtor, the Debtor failed to preserve approximately $35,000.00 in equity, even after a foreclosure sale discount of approximately twenty-five percent (25%); (2) the creditors of the Decedent's Estate should not be forced to make claims to the Debtor's potential recovery since these creditors have rights superior to the Debtor in the Sherbrooke Property; (3) the Debtor's interest in the Sherbrooke Property as a residuary beneficiary is subject to a court-ordered sale of the Property by the Surrogate's Court, so that interest constitutes only a personal property interest; and (4) the Martinez decision, where the debtor obtained rights to real property when his father died intestate, is inapplicable to the Debtor, who has a residuary interest in the Decedent's Estate under a Will.

On October 18, 2010, the County filed a Reply in Support of the Motion for Summary Judgment, in which the County indicated that: (1) the Debtor had failed to meet his burden to establish

that there existed a triable issue of fact, because he had not provided any Affidavit from the Debtor, or otherwise; (2) as of October 2010, the Debtor had lived in the Sherbrooke Property for more than twenty-nine months without paying any rent or post-petition taxes, which totaled $21,963.76; and (3) on October 15, 2010, the Debtor filed: (a) a Chapter 7 Statement of Intention, dated September 30, 2010, indicating that he intended to surrender the Property and did not intend to claim a homestead exemption in the Property; and (b) a Motion to Convert his case from Chapter 13 to Chapter 7, resulting in the case being converted on October 15, 2010.

On October 18, 2010, the Debtor filed a letter in further opposition to the Motion for Summary Judgment, wherein the Debtor asserted that: (1) he was also entitled to a homestead exemption because he had specifically indicated on his Schedule A that the deed to the Property was not in his name, and claimed a Homestead Exemption pursuant to CPLR § 5206(a) on his Schedule C, and no party timely objected; and (2) the County and Brault had failed to provide admissible evidence of their allegations that the Debtor breached his fiduciary duty to the Decedent's Estate.

On October 20, 2010, the Court held a combined hearing on the Motions for Summary Judgment and a Pre-Trial Conference in the

Adversary Proceeding, at which time the Court reserved decision on the Motions for Summary Judgment.

## DISCUSSION

I.   The Debtor's Standing Under Section 522(h)

Under Section 522(h), "[t]he debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if- (1) such transfer is avoidable by the trustee under section . . . 548 . . .; and (2) the trustee does not attempt to avoid such transfer."

The Trustee, for the reasons he stated in his February 5, 2010 letter, elected not to commence an adversary proceeding to attempt to avoid the Transfer, so the Court, aware of the applicable statute of limitations, authorized the Debtor to commence the Adversary Proceeding without finally determining: (1) the Debtor's standing under Section 522(h); or (2) what, if any, interest the Debtor owned in the Sherbrooke Property at the time of the Transfer.

The Debtor has asserted that he has standing under Section 522(h), for several reasons, including that he is entitled to the necessary qualifying homestead exemption by an "exemption by ambush," because: (1) he scheduled the Sherbrooke Property and

**Page 17**

claimed it as exempt on his Schedule C, pursuant to CPLR § 5206;

and (2) no party timely objected. Without determining the validity

of the Debtor's asserted exemption by ambush, this Court reads the

plain language of Section 522(h) as requiring the Bankruptcy Court

to determine if the debtor "could have" exempted the property in

question, and an exemption by ambush does not satisfy the need for

the Court to actually make that determination.[11]

Therefore, for the Debtor to have the necessary standing and

to prevail in the Adversary Proceeding, he must demonstrate that he

"could have" exempted the Sherbrooke Property, or any interest in

it, under 522(g)(1).[12] Since, pursuant to Section 522(b)(2), New

---

[11]   Although the County was listed as a creditor and could have objected
to the claimed objection, very often the recipient of a possible avoidable
fraudulent conveyance transfer is initially not on notice of, nor a party to the
bankruptcy case.

[12]   Section 522(g) provides that:

(g) Notwithstanding sections 550 and 551 of this title, the
debtor may exempt under subsection (b) of this section
property that the trustee recovers under section 510 (c)(2),
542, 543, 550, 551, or 553 of this title, to the extent that
the debtor could have exempted such property under subsection
(b) of this section if such property had not been transferred,
if—

(1)

(A) such transfer was not a voluntary transfer of
such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under
subsection (f)(1)(B) of this section.

11 U.S.C. § 522 (2011).

**Page 18**

York has opted out of the federal exemptions contained in Section 522(b)(3), the Debtor's standing to pursue the Adversary Proceeding under Section 522(h) is dependent upon his showing that he actually qualified for a homestead exemption pursuant to CPLR § 5206,[13] either at the time of the Transfer, the filing of his petition or even at the commencement of the Adversary Proceeding.  CPLR § 5206 provides for the exemption of a homestead  " . . . owned and occupied as a principal residence . . . "  It is not contested that the Debtor occupied the Sherbrooke Property as a principal residence as of the date of the Transfer, so that the Debtor's standing to pursue the Adversary Proceeding is contingent upon whether the Debtor "owned" the Property within the meaning and intent of CPLR § 5206 at the time of the Transfer, the filing of his petition or even the commencement of the Adversary Proceeding.[14]

    A. <u>"Owned" Under CPLR § 5206(a)</u>

---

[13]     The Debtor has not asserted any other potential exemption, for example, an exemption for his interest in the Decedent's Estate.

[14]     The Court will not address in this Decision & Order the County's assertion that the Debtor is not entitled to a homestead exemption under CPLR § 5206(a) because of the provision in CPLR § 5206(a) that "...no exempt homestead shall be exempt from taxation or from sale for non-payment of taxes or assessments[,]" although the Court notes that this provision appears only to indicate that a debtor cannot claim a homestead exemption such that the exemption could be claimed ahead of taxes accruing on a property or the sale of a property for the non-payment of taxes.

The Court holds that the Sherbrooke Property was not "owned" by the Debtor within the meaning and intent of CPLR § 5206 at the time of the Transfer, the filing of his petition or commencement of the Adversary Proceeding, for the following reasons:

(1) the term "owned" is not defined in CPLR § 5206, and the Court is not persuaded by the Debtor's assertion that any "interest in real property" provided for under NYRPL § 240 is sufficient to satisfy the "owned" requirement under CPLR § 5206, because: (a) nothing in CPLR § 5206 states that NYRPL § 240, or any other New York State statute, should be utilized to define "owned" under CPLR § 5206; (b) the section cited by the Debtor, § 240(4), actually provides the definition for both an "estate" and an "interest in real property," which indicates that the definition is too broad to reasonably be utilized to define the term "owned" under CPLR § 5206; and (c) there are many interests in real property that do not constitute an "ownership" interest, so that possessing one or more of those "interests in real property" does not, in and of itself, constitute an ownership interest under CPLR § 5206;

(2) the plain language of CPLR § 5206 does not support an interpretation, as asserted by the Debtor, that would permit him to claim a homestead exemption because he was the child of the Decedent, or because his interest in the Decedent's Estate was a personal property interest, rather than a real property ownership

interest, specifically: (a) the provision in CPLR § 5206(b) that an owner's homestead exemption continues after the owner's death in favor of the owner's surviving children until the youngest surviving child reaches majority, indicates that the New York State Legislature specifically sought, through the plain language of CPLR § 5206(b), only to protect minor children until they reached the age of majority, not any children, such as the Debtor, who is an adult, well past the age of majority; and (b) the extension in CPLR § 5206(a)(4) of the homestead exemption to a mobile home, when viewed in the context of the list of interests stated in CPLR § 5206(a), demonstrates that the New York State Legislature sought not to preclude the exemption of a mobile home because it often serves as a principal residence, notwithstanding that it is personal property, rather than to extend the exemption to other forms of personal property, which do not serve as a principal residence, such as the Debtor's residual interest in the Decedent's Estate;

(3) the Connelly decision is not controlling precedent because the Court in Connelly addressed the different issue of whether a homestead exemption under CPLR § 5206 may be claimed in property that is swept back into a debtor's estate under Section 541(a)(5), whereas in the Debtor's case: (a) the Sherbrooke Property was specifically held not to be property of the Debtor's estate; (b)

the Debtor never has become the undisputed "owner" of the Property, since no deed has ever been executed in his favor after the Decedent's Estate has been fully administered, or the Estate even fully administered; (c) it is unclear from the Connelly decision how the real property at issue was "inherited," for example, by specific devise, or what the Court meant when it referred to the property as inherited; and (d) under the specific facts and circumstances of the Connelly case, the Court determined that the debtor was entitled to the fresh start intended by the Bankruptcy Code, and was not, in the Court's opinion, the type of individual that the New York State Legislature intended to prevent from claiming a homestead exemption, in part due to equitable bankruptcy considerations that do not seem to this Court to be relevant to a determination of the meaning and intent of "owned" under CPLR § 5206;

(4) this Court agrees with the Court in Martinez that for property to be "owned" under CPLR § 5206, a written deed is not necessarily required, but the finding in Martinez that an ownership interest sufficient to satisfy CPLR § 5206 vests in a distributee immediately upon an intestate death is not controlling, because the Debtor is a mere residuary beneficiary under the Decedent's Will, and the Decedent's Estate has not and may never be fully administered because of the Debtor's inaction, which resulted in the loss, through real property tax foreclosure proceedings, of the

only apparent assets of the Estate that could be used to pay claims
and administrative expenses;

(5) under the analysis of the County and Brault in <u>Freund</u> and
<u>Franks's Will</u>, the Debtor, upon the Decedent's death, under the
general bequest in her Will, was a residuary beneficiary of all
real and personal property, who had an interest in the Sherbrooke
Property, which was not specifically described in the Will, subject
to divestment, should:  (1) he, as administrator, sell the Property
in order to pay off the claims and expenses of the Estate; or (2)
the Surrogate's Court require the sale of the Property in order to
pay them.  The Court agrees that this interest is a personal
property interest which, the Court finds, under the facts and
circumstances of this case, fails to meet the requirement that the
Sherbrooke Property be "owned" by the Debtor under CPLR § 5206,[15]
because:

(a) while the Court is not required to make a finding as to
the certainty of a Surrogate's Court ordered sale of the Sherbrooke
Property, it is apparent that at the time of the Transfer, a sale
of the Property by the Surrogate Court was a distinct possibility,
because:  (i) the Debtor had never contested that the Property was
then the sole asset of the Estate available to pay any
administrative expenses and claims; (ii) at a minimum, the

---

[15]    The Court notes that this also, as indicated in the Trustee's
February 5, 2010 letter, is the only interest of the Debtor that was arguably
lost by the Transfer.

following administrative expenses and claims existed against the Estate: (a) funeral expenses of at least $6,883.00; (b) attorneys' fees of approximately $1,500.00; and (c) real property taxes owed to the County on the Sherbrooke Property of approximately $11,000.000; and (iii) the Debtor had not taken the necessary steps to fully administer the Estate;

(b) to the extent that issues may exist as to the likelihood of sale of the Sherbrooke Property being ordered by the Surrogate's Court or the nature and extent of other claims against the Estate, including a potential claim by E-Trade on its Note and Mortgage on the Augustine Property for approximately $39,000.00, these issues remain outstanding because of the Debtor's inaction, specifically: (i) the Debtor, who was appointed the sole administrator of the Estate in approximately March 2006, has failed to fully administer the Estate, which still remains open; and (ii) the Debtor failed to preserve the sole assets of the Estate, the Augustine and Sherbrooke Properties, which the Debtor permitted to be acquired by the City of Rochester and the County, respectively, through *in rem* tax foreclosure proceedings, upon the Debtor's failure to pay taxes on the Properties, or contest the tax foreclosure proceedings in any way;

(c) the Court should not, as asserted by the Debtor, be required to create a procedure for the filing and resolution of claims of the Estate against the judgment that the Debtor seeks

against the County, since such a procedure is not provided for in the Bankruptcy Code or Rules, and it would: (i) undermine the procedures established in Surrogate's Court for the administration of estates; (ii) violate the prohibition against the filing of a decedent's estate in bankruptcy; and (iii) be inequitable, because the Debtor's rights, if any, to the proceeds from the sale of the Sherbrooke Property, are inferior and subject to the claims of creditors against the Estate;

(6) the Debtor has not conducted himself as the owner of the Sherbrooke Property, since he failed to: (i) pay pre-petition taxes, which became due after the Decedent's death in 2006 while he resided in the Sherbrooke Property, as well as any post-petition taxes which became due before the Bankruptcy Court Decision & Order became final and non-appealable; (ii) contest the Tax Proceeding; and (iii) fully administer the Decedent's Estate so that he could obtain clear legal title to the Property, if it were not required to be sold as part of the administration;

(7) the Debtor has not presented any evidence that he has any monetary investment in the Sherbrooke Property;

(8) the Court is of the opinion that, based upon the facts and circumstances presented, and for the reasons stated in this Decision & Order, the Debtor is not the type of "owner" that the New York State Legislature intended to provide with a homestead exemption under CPLR § 5206(a); and

(9)   although this Court continues to be concerned about the County's real property tax foreclosure procedures, which do not subject the property in question to a public sale, that could result in the taxes being paid and might preserve any equity for a defaulting owner/taxpayer, this concern is not a reason to find this Debtor to be an "owner" within the meaning and intent of CPLR § 5206.


### CONCLUSION

The County's Motion for Summary Judgment is hereby granted in all respects.  The Debtor's Cross-Motion for Summary Judgment and the County's Counterclaims are hereby in all respects denied.


**IT IS SO ORDERED.**


_____/s/_____
**HON. JOHN C. NINFO, II**
**U.S. BANKRUPTCY JUDGE**


**Dated:  February 4, 2011**